# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHAUN PARKER GAZZARA, ANA PAULA GAZZARA, HARRY JAMES WHITMAN and MARCIA FAYE WHITMAN,**

      **Plaintiffs,**

**v.**                                                                   **Case No:   6:16-cv-657-Orl-31TBS**

**PULTE HOME CORPORATION,**

      **Defendant.**

## ORDER

This matter comes before the Court on the Motion to Exclude the Testimony of Jeffrey Randazzo (Doc. 166) filed by the Defendant, Pulte Home Corporation ("Pulte"), and the memorandum in opposition (Doc. 176) filed by the Plaintiffs.

**I.    Background**

The Plaintiffs own homes built by Pulte in the Lake Sawyer community in Windermere, Florida.  They seek to certify a class of people who own homes that were built between 2006 and 2016 with (1) stucco siding over a wood frame and (2) violations of certain provisions of the Florida Building Code.[1]  The putative class could include more than 17,000 homes.

In connection with their Motion for Class Certification (Doc. 143), Plaintiffs rely on the report (Doc. 161-16) of Jeffrey Randazzo ("Randazzo"), president of Randazzo Builders, Inc.,

---

[1] These provisions and their titles are ASTM C926, the Standard Specification for Application of Portland Cement-Based Plaster, and ASTM C1063, the Standard Specification for Installation of Lathing and Furring to Receive Interior and Exterior Portland Cement-Based Plaster.

which specializes in construction remediation. In his report, Randazzo establishes a "turnkey" firm price commitment to remediate stucco damage on every class member home in Florida. (Doc. 161-16 at 2). Pulte seeks to exclude Randazzo's testimony as irrelevant and contrary to Federal Rule of Evidence 701 and 702, as well as *Daubert v Merrill Dow Pharms., Inc.* 509 U.S. 579 (1993).

## II.     Legal Standard

### A.     Expert Testimony

Federal Rule of Evidence 702 governs the admission of expert witness testimony. It provides that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of the opinion testimony has the burden of establishing each precondition to admissibility by a preponderance of the evidence. *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292 (11th Cir. 2005).

In *Daubert v. Merrill Dow*, 509 U.S. 579 (1993), the Supreme Court admonished trial courts to fulfill a gatekeeping role in the presentation of expert testimony. To guide district courts' assessments of the reliability of an expert's testimony, the Supreme Court identified four factors that district courts should consider: (1) whether the expert's methodology has been tested

or is capable of being tested; (2) whether the theory or technique used by the expert has been subjected to peer review and publication; (3) whether there is a known or potential error rate of the methodology; and (4) whether the technique has been generally accepted in the relevant scientific community. *See id*. at 593–94. At the same time, the Court has emphasized that these factors are not exhaustive and are intended to be applied in a "flexible" manner. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). District courts are charged with this gatekeeping function "to ensure that speculative, unreliable expert testimony does not reach the jury" under the mantle of reliability that accompanies the appellation "expert testimony." *Rink*, 400 F.3d at 1291 (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002)).

### B. Class Actions

Class actions are governed by Federal Rule of Civil Procedure 23. Rule 23 provides, in pertinent part, that one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as

> required by Rule 23(a).   The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal citations and quotations omitted).   In the instant case, the provision under which the Plaintiffs seek to proceed is Rule 23(b)(3), which permits a class action to be maintained if Rule 23(a) is satisfied and if the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> **(A)** the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

   A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class.   *Gen. Tel. Co. v. Falcon,* 457 U.S. 147 (1982).   "The burden of proof to establish the propriety of class certification rests with the advocate of the class."   *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003).   When an expert's report or testimony is critical to class certification, a district court must conclusively rule on any challenge to the expert's qualifications or submissions prior to ruling on a class certification motion.   *Sher v. Raytheon Co.*, 419 Fed. Appx. 887, 890 (11th Cir. 2011) (citing *American Honda Motor Co., Inc. v. Allen*, 600 F. 3d 813, 815-16 (7th Cir. 2010)).

> A district court is the gatekeeper. It must determine the reliability of the expert's experience and training as well as the methodology used. The [district] court must also resolve any challenge to the reliability of information provided by an expert if that information is relevant to establishing any of the Rule 23 requirements for class certification.

*Id.* at 890 (internal citations omitted).

**III.   Analysis**

Randazzo's task was to calculate a guaranteed fixed turnkey price that he would charge to accomplish, in regard to each class members' home, the scope of work established by Plaintiffs' liability expert, Thomas Miller of Structural Engineering and Inspections, Inc.   (Doc. 143-8 at 2). That scope of work requires the removal of the entire stucco system on every home in the class, including stucco, lath, weather-resistant barrier, accessories, soffit, windows and any damaged sheathing and substrate, as well as removal or remediation of any mold or mildew.   (Doc. 143-8 at 2).   Following this demolition and repair, Randazzo would reinstall a complete new stucco system.   (Doc. 143-8 at 3).

To determine his price, Randazzo prepared a spreadsheet of costs based on a proxy structure with 8,500 square feet of stucco to be removed.[2]   (Doc. 161-9 at 89-90).   Those costs are based on an assumption that half of the homes in the class will require removal and replacement of interior sheathing and substrate, and his general conditions include additional charges to cover virtually every conceivable risk – including asbestos removal, waterproofing and structural engineering – plus a mobilization charge of $30,000 and a $15,000 "contingency." Using these costs, Randazzo arrives at a price of $53.97 per square foot.[3]

---

[2] This size represents the work (general conditions) Randazzo's company can do in a month.   (Doc. 161-9 at 87).

[3] There is no other support provided for these costs.   Miller testified that he has never

- 5 -

### A.     Randazzo's Expertise

Randazzo readily concedes that he is not an expert, has never previously testified as an expert and holds no licenses in the construction industry.   (Doc. 161-9 at 7-9).[4]   He has been in the stucco remediation business since 1996, working primarily on multifamily apartment complexes.   (Doc. 161-9 at 8).   Thus, while he is competent to calculate the price his own company would charge for remediating the (theoretical) proxy structure, he lacks the expertise needed to opine as to the reasonable cost in the industry of remediating over 17,000 Florida homes.

### B.     Randazzo's Methodology

As set forth above, Randazzo's methodology involves the use of a proxy structure with 8,500 square feet of stucco to be removed, with the cost calculated using Miller's scope of work.   There are several problems with this methodology.   First, neither Randazzo nor Miller has provided justification for assuming that every house (or any house) in the class will require the extensive scope of work dictated by Miller; and second, it is mere speculation that half of the homes will have not only cracked stucco but stucco that is in such bad shape that the underlying structure has suffered damage.   In addition, many of the costs included by Randazzo – such as asbestos removal, replacement of damaged windows and railings, structural engineering, landscaping, and electrical work (Doc. 161-16 at 12) – appear to be either overstated or inapplicable.

---

seen a price this high for stucco remediation.   (Doc. 193 at 72).

[4] Plaintiffs' counsel describes Randazzo as a "hybrid" in that "he is not an expert in the traditional sense as contemplated by the Rules where he's been paid to render a specific opinion." Doc. 161-9 at 52.

During argument at the class certification hearing on February 28, 2017, Plaintiffs' counsel argued that the Court could rely on building permits issued in connection with other stucco remediation at the Lake Sawyer Community to determine the appropriate measure of damages for the class in this case.  (Doc. 203 at 14, 59-60).  He also asserted that the townhomes being repaired ranged from 1,000 to 1,500 square feet of stucco being replaced.  (Doc. 203 at 17).  At Randazzo's price of $53.97 per square foot, this would amount to repair costs of $53,970 to $80,955 for each townhome.  Based on the building permits submitted by the Plaintiffs, the actual repair costs for the townhomes in the Lake Sawyer Community are significant lower, ranging from $25,000 to $35,000.  (Doc. 205-1).

### C. Randazzo's Testimony

Finally, and perhaps most importantly, Randazzo's testimony will not help the trier of fact. Plaintiffs sponsor Randazzo to support their common damages theory as it pertains to the class. However, his opinion relates only to what his company would charge to cover (1) the Miller scope of work and (2) virtually every conceivable risk he might encounter in performing this "turnkey" project.  In the absence of evidence that all of the houses in the class would require all of these tasks as part of stucco remediation, it would be improper to include them in a damage calculation. The issue for trial would be the reasonable cost to repair the stucco damage at each class member's home, not what Randazzo would charge to accomplish Miller's unsupported dictate class-wide.

## IV. Conclusion

In their response to the instant motion, Plaintiffs assert that Randazzo's testimony is not essential to certification. (Doc. 176 at 14). Rather, Plaintiffs argue that at certification they are only required to posit a <u>method</u> by which class-wide damages may be calculated.[5] Here, that method is to apply Randazzo's "turnkey" flat rate per square foot to every home owned by a member of the class. (Doc. 176 at 15). However, that method is neither reliable nor relevant, and otherwise fails to meet the requirements of Rule 702.

It is, therefore

**ORDERED** that the Motion to Exclude the Testimony of Jeffrey Randazzo (Doc. 166) is **GRANTED** and Randazzo's testimony will be excluded.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on March 10, 2017.

_____
**GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE**

Copies furnished to:

Counsel of Record
Unrepresented Party

---

[5] Pulte agrees that the Court need not consider the admissibility of Randazzo's testimony if it denies class certification. (Doc. 166, p. 7).