# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

**SHAUN PARKER GAZZARA, ANA PAULA GAZZARA, HARRY JAMES WHITMAN and MARCIA FAYE WHITMAN,**

       **Plaintiffs,**

**v.**                                              **Case No: 6:16-cv-657-Orl-31TBS**

**PULTE HOME CORPORATION,**

       **Defendant.**

## ORDER

This matter comes before the Court after a February 28, 2017 hearing on the Motion to Certify Class (Doc. 143) filed by the Plaintiffs, as well as the response in opposition (Doc. 161) filed by the Defendant, Pulte Home Corporation[1] ("Pulte"), and the reply (Doc. 168) filed by the Plaintiffs.

According to the allegations of the Second Amended Complaint (Doc. 107) (henceforth, "SAC"), the named plaintiffs in this case are two couples who own homes in Orange County, Florida, built by Pulte. The Plaintiffs contend that their homes, and thousands of others built by Pulte in the past ten years, had the stucco siding applied improperly, leading to cracking. By way of the instant motion, the Plaintiffs seek to certify a class of similarly situated homeowners.

---

[1] As of December 31, 2016, the Defendant's name has changed to Pulte Home Company, LLC. (Doc. 181).

**I.     Background**

The Plaintiffs filed this case on April 18, 2016.   In their first amended complaint (Doc. 11), which was filed eleven days later, the Plaintiffs asserted claims for negligence, intentional construction of defective siding, and violations of a statute – Florida Statute § 553.84 – which provides a cause of action for anyone damaged due to violations of the Florida Building Code (henceforth, the "Code").   On September 8, 2016, the Court granted Pulte's motion to dismiss that pleading.   (Doc. 97).

The Second Amended Complaint (Doc. 107) was filed on September 23, 2016.   In it, the Plaintiffs purported to raise two claims under Section 553.84: one for violations of the Code, and one for intentional violations of the Code.   The claim for intentional violations was subsequently dismissed with prejudice.   (Doc. 160 at 7).

On November 21, 2016, the Plaintiffs filed the instant motion.   In December 2016, Pulte moved to exclude the testimony of Jeffrey Randazzo, a contractor who had provided the Plaintiffs with a "firm price commitment" to replace all of the affected stucco in the class members' homes. (Doc. 166).   Pulte also moved to exclude the testimony of Thomas Miller, the Plaintiffs' stucco expert.   (Doc. 167).   The Court subsequently granted both motions, leaving the Plaintiffs without any expert testimony in support of their allegations.   (Doc. 202, 207).[2]

---

[2] The order excluding Miller's testimony is the subject of a motion for reconsideration (Doc. 210), which is not yet ripe for consideration.

## II. Legal Standards

### A. Class Actions

Class actions are governed by Federal Rule of Civil Procedure 23. Rule 23 provides, in pertinent part, that one or more members of a class may sue or be sued as representative parties on behalf of all members only if:

> (1) the class is so numerous that joinder of all members is impracticable;
>
> (2) there are questions of law or fact common to the class;
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a).

> The class action is an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only. To come within the exception, a party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23. The Rule does not set forth a mere pleading standard. Rather, a party must not only be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, typicality of claims or defenses, and adequacy of representation, as required by Rule 23(a). The party must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b).

*Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) (internal citations and quotations omitted). In the instant case, the Plaintiffs seek to proceed pursuant to Rule 23(b)(3), which applies if

> the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> **(A)** the class members' interests in individually controlling the
> prosecution or defense of separate actions;
>
> **(B)** the extent and nature of any litigation concerning the
> controversy already begun by or against class members;
>
> **(C)** the desirability or undesirability of concentrating the litigation
> of the claims in the particular forum; and
>
> **(D)** the likely difficulties in managing a class action.

Fed.R.Civ.P. 23(b)(3).

In addition to the explicit requirements set forth in Rule 23, parties seeking class certification within this Circuit must also satisfy certain *implicit* requirements. One such threshold requirement not mentioned in Rule 23 is that the plaintiff must demonstrate that the proposed class is "adequately defined and clearly ascertainable." *Bussey v. Macon County Greyhound Park, Inc.*, 562 Fed.Appx. 782, 787 (11th Cir. 2014) (citing *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012).

> An identifiable class exists if its members can be ascertained by
> reference to objective criteria. The analysis of the objective criteria
> should be administratively feasible. "Administrative feasibility"
> means that identifying class members is a manageable process that
> does not require much, if any, individual inquiry.

*Id.* (internal citations and quotations omitted).

A district court must conduct a rigorous analysis of the Rule 23 prerequisites before certifying a class. *Gen. Tel. Co. v. Falcon,* 457 U.S. 147 (1982). The burden of proof to establish the propriety of class certification rests with the advocate of the class. *Valley Drug Co. v. Geneva Pharms., Inc.,* 350 F.3d 1181, 1187 (11th Cir. 2003).

### B. Fla. Stat. § 553.84

Florida Statute § 553.84, titled "Statutory civil action," provides a cause of action for anyone damaged as a result of a violation of the Florida Building Code:

> Notwithstanding any other remedies available, any person or party, in an individual capacity or on behalf of a class of persons or parties, damaged as a result of a violation of this part or the Florida Building Code, has a cause of action in any court of competent jurisdiction against the person or party who committed the violation.

Fla. Stat. § 553.84. The statute also provides the homebuilder with a defense, so long as (1) the homebuilder obtains any required building permits, and the appropriate agency approves the plans; (2) the project passes all required inspections under the Code; and (3) there is no personal injury or damage to property other than the property that is the subject of the permits, plans, and inspections. Fla. Stat. § 553.84. However, the defense does not apply if the homebuilder knew or should have known that the violation existed. Fla. Stat. § 553.84.

## III. Analysis

The Plaintiffs seek to certify a class consisting of

> All individuals, corporations, associations, trusts, or other entities that currently own single family detached residences, condominiums, or townhomes (collectively, "homes") constructed by Pulte in Florida between April 18, 2006 and April 18, 2016, with a Drainage Plane Exterior Stucco Wall System over Wood Frame and Wood Sheathing … which contains dissimilar materials, specifically Portland cement-aggregate plaster mix designed for use on exterior surfaces and either steel, aluminum, plastic, vinyl, or other inert materials from that of the Portland cement-aggregate plaster mix, or contain stucco surfaces which are either (a) in excess of one hundred forty-four (144) contiguous square feet, or (b) are greater than eighteen (18) linear feet in length, or (c) have a surface area with a length to width ratio greater than two and one-half (2 1/2) to one (1), or both.

(SAC at 2-3). The Plaintiffs contend that each class member has a claim against Pulte for a violation of Fla. Stat. § 553.84, in that they allegedly suffered damage as a result of violations of the Florida Building Code committed by Pulte or its subcontractors during construction of their homes.

The Florida Building Code incorporates what are referred to as "ASTM standards".[3] According to the Plaintiffs, the "vast majority" of the stucco-sided homes built by Pulte during the relevant time frame were constructed in a manner that fell short of at least one of two specified ASTM standards – ASTM C926 or ASTM C1063 – in one or more of the following ways:

> [the houses] lack separation where [the stucco siding] abuts dissimilar construction materials or openings (ASTM C926 – 7.1.4); or, lack adequate Control Joints to delineate areas not more than one hundred forty four (144) square feet (ASTM C1063 – 7.11.4.1), or, the distance between such Control Joints exceeds eighteen (18) feet in either direction (ASTM Cl063 – 7.11.4.2), or, the distance between Control Joints exceeds a length to width ratio of two and one half (2 1/2) to one (1) (ASTM 1063 – 7.11.4.2); or, both.

(SAC at 4).

The Plaintiffs contend (and Pulte does not dispute) that each such failure to satisfy ASTM C926 or ASTM C1063 would constitute a violation of the Code. The Plaintiffs further contend that stucco siding "will crack" if there is a violation of the Code, (SAC at 5), and that each of the putative class members' homes that were built with one or more of these violations has suffered harm, resulting from the violation, in the form of cracked stucco siding:

> Pulte's failure to construct CODE compliant STUCCO SIDING was and is the proximate cause of the harm to all Class members whose homes have CODE VIOLATIONS. This harm is cracking of their homes' STUCCO SIDING.

(SAC at 4) (capitalization in original).

However, the Court finds that the Plaintiffs have not met their burden of establishing that the class members' Section 553.84 claims are suited to class treatment, as detailed below.

---

[3] According to its website, ASTM International (formerly known as the American Society for Testing Materials) is one of the world's largest standards-developing organizations, with more than 30,000 members. *What is ASTM?*, https://www.astm.org/ABOUT/factsheet.html (last visited March 3, 2017). ASTM International develops, *inter alia*, standards for construction practices, including the two at issue in this case.

### A. Ascertainability

The Plaintiffs contend that the class in this case is "easily ascertainable." However, the only assertion put forward in support of this contention is that "Pulte has the home addresses of the class members." (Doc. 168 at 5). This is not correct. It may be true that Pulte has addresses as to at least some owners of the stucco-sided houses it built between April 18, 2006 and April 18, 2016 – though not necessarily as to subsequent purchasers of those homes. However, this is not "the class." According to the Plaintiffs' definition, "the class" consists of the owners of the stucco-sided homes Pulte built in Florida within that ten-year span *that have one of the two specified Code violations*. *See* SAC at 2-3. While the use of a defendant's records to identify class members is certainly permissible,[4] the Plaintiffs have not provided any evidence suggesting that Pulte kept records as to which homes were built with particular Code violations. They also have not provided any other "objective criteria" from which the identities of the class members could be ascertained. The Plaintiffs argue that class members can self-identify, but the prospect of thousands of mini-trials (as Pulte challenges the homeowners' membership in the class) renders that process administratively infeasible. *See Karhu v. Vital Pharmaceuticals*, 621 Fed. Appx.945, 948-49 (11th Cir. 2015). Accordingly, the Court finds that the Plaintiffs' proposed class fails the threshold requirement of ascertainability.

### B. Numerosity

During the relevant time frame, Pulte built more than 17,000 homes with stucco siding. (Doc. 161 at 2). Moreover, during the class certification hearing, Pulte's attorneys explained that their client had recently purchased another construction company, which itself had built more than

---

[4] *See, e.g., Bussey*, 362 Fed.Appx at 788 (in case seeking to recover gambling losses, affirming use of records tied to defendant-issued "loyalty cards" to identify individuals who suffered losses while using the machines at issue).

10,000 homes with stucco siding during the ten years preceding the filing of this suit. It is not clear whether the class definition was intended to encompass this second group of homes. Either way, however, Pulte does not seriously contest that the numerosity requirement has been met here.

**C. Commonality**

As noted by the Supreme Court, the Rule 23(a)'s requirement that there be "questions of law or fact common to the class" is easily misread, since any competently crafted class complaint literally raises common "questions." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011) (internal quotation and citation omitted).[5] Commonality requires that the plaintiffs demonstrate the class members have suffered the same injury – which does not mean merely that they have all suffered a violation of the same provision of the law. *Id.* at 349-350 (citing *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982)). Rather, the claims must depend upon a common contention, which must be of such a nature that it is capable of classwide resolution. *Id.* at 350. This means that the contention must be such that a determination of its truth or falsity "will resolve an issue that is central to the validity of one of the claims in one stroke." *Id.*

To establish the requisite commonality here, the Plaintiffs assert in their motion that "damage and causation is common throughout the class." (Doc. 143 at 6.) These are not common *contentions*, however. The damage to each class member's home is separate from the damage to the homes of all the other class members, and it is not alleged to have resulted from a

---

[5] For example, in *Dukes* – an employment discrimination case – the court rejected, as insufficient to warrant class certification, "common" questions such as

> Do all of us plaintiffs indeed work for Wal-Mart? Do our managers have discretion over pay? Is that an unlawful employment practice? What remedies should we get?

*Id.* at 349.

single act or policy on the part of the Defendant. The Plaintiffs have not identified any single contention that, if proven, will resolve any issue that is central to determining either damage or causation.

Citing other cases in which classes were certified, the Plaintiffs argue that the pervasiveness of Pulte's (alleged) violations weighs in favor of certification, and assert that cases in which undisclosed or latent product defects cause economic loss "frequently involve common issues of law and fact requiring class treatment." (Doc. 143 at 6). But the Plaintiffs never explain how either of these points would argue in favor of certification *as to the instant case*. Standing alone, a finding that Pulte (or its subcontractor) improperly applied stucco at one home in one neighborhood does not establish that the same occurred at some other home in some other Pulte-built neighborhood.[6] So, too, for causation: Despite the Plaintiffs' argument to the contrary, even if the Plaintiffs could show that one of the two specified Code violations caused stucco cracking at one class member's home, it would do nothing to establish that cracks in the stucco of any other class member's home were caused by one of those two Code violations. The Plaintiffs never offered any evidence from which a fact finder could determine the cause of a particular instance of cracking. Even before his testimony was excluded, the Plaintiffs' stucco expert, Miller, could only opine that, generally, Code violations could lead to cracking. However, he acknowledged that cracking could occur even in the absence of Code violations. Thus, merely showing that a house has Code violations and cracked stucco is not enough to establish that the former caused the latter.

---

[6] As noted above, there is no allegation or evidence that Pulte had a policy of or requirement that its subcontractors install stucco in violation of either of the relevant Code provisions: ASTM 926 or ASTM 1063.

The Plaintiffs also argue that a common remedy exists throughout the class – replacement of existing siding. Even assuming *arguendo* that replacement is the proper remedy here – as opposed to repair, for example, or payment for diminution of home value – the existence of a common remedy does not suffice to establish commonality.[7] As with damages and causation, there is no common contention in regard to the proper remedy that, if proven, will resolve any issue central to the class members' claims.

### D. Predominance and superiority

Under Rule 23(b)(3), it is not necessary that all question of fact or law be common, but only that some questions of fact or law are common and that they predominate over individual questions. *Klay v. Humana, Inc.*, 382 F.3d 1241, 1254 (11th Cir. 2004) (*abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008)). However, "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, must predominate over those issues that are subject only to individualized proof." *Kerr v. City of West Palm Beach*, 875 F.2d 1546, 1558 (11th Cir. 1989) (internal quotation omitted). In determining whether class or individual issues predominate in a putative class action suit, the court must take into account the claims, defenses,

---

[7] It should be noted that, despite Plaintiffs' arguments to the contrary, nothing in the record suggests that the only proper remedy in this case is replacement of all affected stucco. The Plaintiffs allege that Hoy & Miller Consulting, LLC ("Hoy & Miller"), a consultant hired by Pulte, recommended replacement of stucco in a number of homes in their neighborhood, and that Pulte is in the process of doing so. (Doc. 143 at 7). But even taken together, Hoy & Miller's recommendation and this voluntary action undertaken by Pulte do not establish that replacement is the remedy required under Fla. Stat. §553.84 even as to the houses Pulte is currently repairing, much less as to the homes owned by members of the putative class. The Court also notes that Hoy & Miller only recommended replacement at some of the houses at issue, and it did so only after finding numerous problems in those houses beyond the two Code violations specified by the Plaintiffs here. (Doc. 202 at 17-20).

relevant facts, and applicable substantive law. *Coastal Neurology, Inc. v. State Farm Mut. Auto. Ins. Co.,* 458 F. App'x 793, 794 (11th Cir. 2012).

As discussed in the preceding section, there really are no questions of law and fact that are common to all members of the putative class. But even if there were, they would likely be overwhelmed by the daunting number of questions in this matter that would likely be subject to individualized proof. Those questions include (but almost certainly would not be limited to) the following:

> 1. How much damage (such as cracking and any structural harm caused by water intrusion through the cracks) occurred at a particular class member's home?
>
> 2. Was the damage caused by a Code violation during initial construction, or was it caused by something – such as, for example, subsequent construction – for which Pulte is not liable under Fla. Stat. § 553.84?
>
> 3. What would be the cost of the Plaintffs' preferred remedy – i.e., replacement of all of the stucco in the house and repair of any structural harm? And (for purposes of Florida's economic waste doctrine) what is the difference between the value of the house contracted for and the value of the house received from Pulte?8
>
> 4. Was the house properly permitted, and did it pass inspection, thereby supporting an affirmative defense under Fla. Stat. § 553.84? And if so, did Pulte know, or should it have known, about the Code violations, thereby nullifying that defense?

---

[8] Under Florida law, the proper measure of damages for defective construction is generally either the reasonable cost of construction and completion in accordance with the contract, if this is possible and does not involve unreasonable economic waste, or – if construction and completion in accordance with the contract would involve unreasonable economic waste – the difference between the value that the product contracted for would have had and the value of the performance that has been received by the plaintiff. *Grossman Holdings Ltd. v. Hourihan*, 414 So. 2d 1037, 1039 (adopting subsection 346(1)(a) of the Restatement (First) of Contracts (1932) regarding damages for breach of a construction contract).

These are just the most obvious individualized questions – the ones that seem likely to require answering in regard to most if not all of the homes in the class. Pulte raises a number of other issues requiring individualized proof – such as the statute of limitations[9] – that seem likely to apply as to at least some of the class members here. Any one of these individualized questions might not predominate over common questions of law and fact in a typical case. But in this case, there are a host of questions requiring individualized proof and nothing of consequence that is capable of resolution via generalized proof. The Plaintiffs have failed to show that common questions predominate over individualized questions here.

This failure extends to Rule 23(b)(3)'s superiority requirement as well. The focus of the "superiority" analysis is on the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs. *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1183–84 (11th Cir. 2010) (citation omitted). The predominance analysis has a significant impact on the superiority analysis; if common issues predominate over individual issues, then a class action is likely to be a superior vehicle for adjudicating the plaintiffs' claims. *Id.* at 1184 (citations omitted). Here, however, common issues do not predominate. And without belaboring the point, the Court finds that the plaintiffs have not presented any compelling arguments in favor of handling all of these claims in a single suit. Based on the assertions of the Plaintiffs, these are not cases with such small possible damages awards that they would not make financial sense to pursue in separate cases.[10]

---

[9] Under Florida law, the presumptive limitations period for actions founded on construction of improvements to real property is five years. Fla. Stat. § 95.11(3)(c). The claims of the members of the putative class extend back ten years prior to the filing of this suit.

[10] The Plaintiffs submitted evidence (subsequently excluded) that the cost of replacing all of the affected stucco – their preferred remedy – would be $53.97 per square foot. (Doc. 143-8). There is nothing in the record as to amount of stucco that would require replacement at each house. But assuming that an average class member's house has several hundred square feet of

Beyond this, the Plaintiffs point to no benefits, organizational or otherwise, that would argue in favor of a class action. Thus, the Plaintiffs have also failed to show that a class action is superior to individual litigation here.

### E. Typicality and adequacy

Pulte vigorously asserts that the named plaintiffs in this case are not typical of or adequate representatives for the other homeowners in the putative class. Among other things, Pulte notes that the named plaintiffs are subsequent purchasers who bought their homes with knowledge of the cracking problem; as a result, Pulte contends, they negotiated (or should have negotiated) a lower purchase price, which would mean that they suffered no damage (or failed to mitigate their damages). (Doc. 161 at 24-25). But given that the Plaintiffs have failed to show that class certification is proper, the propriety of their representation of the class is a moot point.[11]

---

stucco, replacing it at $53.97 per square foot would result in a repair bill in the tens of thousands of dollars.

[11] In addition, the parties spend a great deal of time arguing over whether the notice requirement of Fla. Stat. § 558.003 applies to the members of the putative class and what effect it would have on class certification. In the absence of an otherwise-certifiable class, the Court will not address these issues.

## IV. Conclusion

Although the proposed class is indeed numerous, the Plaintiffs have failed to demonstrate the existence of common questions of law and fact among the class members; they have failed to show that such questions predominate over individual questions; and they have failed to show that a class action is superior to individual suits for resolving these claims. In consideration of the foregoing, it is hereby

**ORDERED** that the Motion to Certify Class (Doc. 143) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on April 11, 2017.

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE